Opinion
OSBORNE, J.
Introduction
Appellant was convicted by jury of violation of Vehicle Code section 23152, subdivision (a), driving while under the influence of alcohol, and section 23152, subdivision (b), driving with 0.10 percent or more of alcohol in his blood. He admitted a prior similar conviction. He was placed on probation, and appeals.
In Burg v. Municipal Court (1983) 35 Cal.3d 257 [198 Cal.Rptr. 145, 673 P.2d 732], at pages 261-266, the Supreme Court reviewed the background leading up to the statute we consider. The death, pain, grief and physical and emotional injury the drunk driver causes need not be retold. Over 75 years ago, the Legislature prohibited driving while intoxicated. (Id. at pp. 261-262.) With the development of scientific measurement of blood-alcohol levels, the Legislature created a presumption of being under the influence if a driver had 0.10 percent or more by weight of alcohol in his blood. (Id. at p. 263.) “Celerity and certainty of punishment were frustrated by the ambiguity of the legal criteria; no matter what his blood-alcohol level, a defendant could escape conviction merely by raising a doubt as to his intoxication.” (Ibid.) In response to this continuing problem, and the continuing threat to public safety posed by drinking drivers, in 1981 the Legislature enacted Vehicle Code section 23152, subdivision (b), which makes it unlaw *Supp. 5 ful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. (Burg, supra, 35 Cal.3d at pp. 263-266.)
Issue
After his arrest, appellant chose to submit to breath tests. Both breath test results showed a blood-alcohol level of 0.10 percent. Appellant contends that as a matter of law, the evidence was not sufficient to sustain the conviction of count 2, driving a vehicle while having 0.10 percent or more alcohol in his blood.
This case addresses the issue whether the Legislature limited evidence to prove a violation of Vehicle Code section 23152, subdivision (b), solely to chemical tests with results so far above 0.10 percent that the range of the margin of error cannot extend below 0.10 percent. We conclude that neither the statute nor general principles of law support such a limitation to the evidence.[1]
Test for Sufficiency of Evidence
In determining whether evidence is sufficient to support a conviction, our inquiry is not whether we believe the evidence established guilt beyond a reasonable doubt, but whether the evidence is such that any reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (People v. Johnson (1980) 26 Cal.3d 557, 575-579 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) “If the circumstances reasonably justify the trial court’s findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding.” (People v. Mosher (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; People v. Newland (1940) 15 Cal.2d 678 [104 P.2d 778].)
Appellant quotes the familiar jury instruction which states, in part, that a finding of guilt may not be based on circumstantial evidence, unless the proved facts and circumstances are not only consistent with guilt, but are inconsistent with any other reasonable conclusion. (CALJIC No. 2.01) Both breath tests taken by appellant after his arrest resulted in readings of 0.10 BAL. Appellant cites testimony of the expert witness that the manufacturer of the test instrument states its accuracy is better than plus or minus 0.010 percent, and therefore a 0.10 BAL could be reasonably interpreted as between a 0.09 and 0.11 BAL. Appellant argues that the convic *Supp. 6 tion of violation of Vehicle Code section 23152, subdivision (b), must therefore be reversed, citing People v. Campos (1982) 138 Cal.App.3d Supp. 1 [188 Cal.Rptr. 366],
Campos, supra, 138 Cal.App.3d Supp. 1, was decided before Burg, supra, 35 Cal.3d 257, without the benefit of the Supreme Court’s interpretation of the statute and its statement, discussed post, that circumstantial evidence other than test results is admissible to establish that a defendant did or did not have the proscribed level of blood alcohol. In discussing only test evidence, the Campos court discussed the circumstantial evidence rule as if it were the jury, and did not discuss the rules stated by the Supreme Court for appellate review of the sufficiency of evidence to support a conviction. We decline to follow Campos.
People v. Towler (1982) 31 Cal.3d 105 [181 Cal.Rptr. 391, 641 P.2d 1253] is dispositive. Appellant in that case likewise focused on the circumstantial evidence jury instruction and argued for a stricter standard of appellate review in circumstantial evidence cases. The Supreme Court rejected that argument. “As numerous decisions of our court explain, however, the circumstantial evidence rule on which defendant relies is ‘primarily for the guidance of the trier of fact.’ [Citations.] ‘The rule . . . does no more than to instruct the jury that if a reasonable doubt is created in their minds for any reason they must acquit the defendant. But where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the jury.’ [Citation.] Thus, even though the appellate court may itself believe that the circumstantial evidence might be reasonably reconciled with the defendant’s innocence, this alone does not warrant interference with the determination of the trier of fact. [Citations.]” (People v. Towler, supra, 31 Cal.3d 105, 118; People v. Gleghorn (1987) 193 Cal.App.3d 196, 202 [238 Cal.Rptr. 82]; In re Richard M. (1988) 205 Cal.App.3d 7, 12 [252 Cal.Rptr. 36].)
Types of Evidence
Appellant discusses only the evidence regarding the breath test results. The evidence relevant to violation of Vehicle Code section 23152, subdivision (b), is not so limited. The Burg case is instructive. “Section 23152, subdivision (b), prohibits driving a vehicle with a blood-alcohol level of 0.10 percent or higher; it does not prohibit driving a vehicle when a subsequent test shows a level of 0.10 percent or more. Circumstantial evidence will generally be necessary to establish the requisite blood-alcohol level called for by the statute. A test for the proportion of alcohol in the blood will, obviously, be the usual type of circumstantial evidence, but of *Supp. 7 course the test is not conclusive: the defendant remains free to challenge the accuracy of the test result, the manner in which it was administered, and by whom. (People v. Lewis (1983) 148 Cal. App.3d 614, 620 [196 Cal.Rptr. 161]; accord, Fuenning v. Superior Court (Ariz. 1983) 680 P.2d 121, 127 (Dec. 15, 1983, No. 17049-SA) . . . ; Cooley v. Municipality Anchorage (Alaska App. 1982) 649 P.2d 251, 254-255.) Of course, both parties may also adduce other circumstantial evidence tending to establish that the defendant did or did not have a 0.10 percent blood-alcohol level while driving. (See, e.g., Fuenning, supra, at p. 130.)” (Burg v. Municipal Court, supra, 35 Cal.3d 257, 266, fn. 10.)
The case of Fuenning v. Superior Court (1983) 139 Ariz. 590 [680 P.2d 121], cited above by the California Supreme Court, is also instructive. The Arizona Supreme Court noted testimony that Intoxilyzer results are subject to three types of error: a margin of error of plus or minus 10 percent in machine accuracy, a margin of error of up to 30 percent resulting from the adoption of a standard breath-alcohol to blood-alcohol conversion ratio, and variation in the rate at which alcohol is absorbed into the bloodstream.[2] (Fuenning, supra, at p. 124.) “Thus, the defendant may offer expert testimony to show that for one reason or another the test results of .10% or higher do not prove beyond a reasonable doubt that the level at the time of driving was in excess of that proscribed. At the same time, the state may introduce evidence to explain the methodology and corroborate or establish the accuracy of the particular test as an indicator of alcohol level at the critical time. . . . The question of whether the evidence as a whole satisfies the necessary standard of proof beyond a reasonable doubt is ordinarily for the jury.” (Id. at pp. 129-130.)
Evidence regarding the manner in which a defendant drove, performed field sobriety tests, and behaved is admissible and relevant as tending to establish that he did or did not have a 0.10 BAL while driving. (Burg *Supp. 8 v. Municipal Court, supra, 35 Cal.3d at p. 266, fn. 10; Fuenning v. Superior Court, supra, 680 P.2d at p.130. See also Cal. Const., art. I, § 28, subd. (d) (Prop. 8); Evid. Code, §§ 210, 351 & 352.)
The Evidence at Trial
As required by People v. Johnson (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], we have reviewed the detailed 31-page engrossed settled statement on appeal to determine whether it discloses substantial evidence such that any reasonable trier of fact could find appellant guilty beyond a reasonable doubt.
At the trial the witnesses were an experienced traffic officer and an experienced criminalist.
1. Testimony of the Officer:
The officer testified to the driving, arrest, and tests. At 11:55 p.m., the officer saw two cars southbound on Victoria Avenue on the Santa Clara River bridge. He later ascertained that appellant was driving the first car. The first car hit its brakes, causing the second to come nearly to a complete stop. Appellant then accelerated, began drifting over the double line, slowed down, and accelerated again. At the next curve, both cars slowed, and the second tried to pass appellant on the right shoulder. Appellant abruptly cut the second car off to the right. There could have been a collision. The second car then tried to pass on the left, and appellant pulled into the oncoming lane and cut off the second car again. The officer stopped both cars.
He approached the first car. Appellant and a woman in the front passenger seat began yelling that someone had been tailgating him. After appellant calmed down, he was cooperative. The officer smelled the odor of an alcoholic beverage on his breath, and noted appellant’s eyes were bloodshot and glassy.
Appellant said he had two burritos to eat at 6 p.m., and drank from 9 to 10:15 that evening at a party. He said he felt the effects of the alcohol “a little bit.”
The officer had appellant perform several field sobriety tests. Appellant’s performance on some was unremarkable.
The officer asked appellant to select one leg and stand on it for 15 seconds. Defendant held his leg up one second, put his foot down, lifted it *Supp. 9 for a second, put it down, stood staring into space, lifted it for two seconds, put it down, then lifted it for about ten seconds while hopping on his foot, eventually losing his balance. Defendant was instructed to walk heel-to-toe nine steps out and seven steps back. Appellant walked seven steps heel-to-toe, then stated, “Oh yeah, you wanted me to walk nine.” He then took three more steps which were not heel-to-toe, turned and walked back eight steps heel-to-toe.
The officer instructed appellant to write numbers backwards from 99 to 69. He transposed two numbers.
After being arrested, appellant selected a breath test which was administered to him at the Ventura County jail by the officer. The officer used a checklist as he had in administering the test 150 to 200 times before. The tests were taken at 12:31 and 12:33 a.m. the day after appellant was stopped. The results were 0.10 and 0.10 percent.
In the opinion of the officer, appellant was under the influence of alcohol.
2. Testimony of the Criminalist:
The criminalist testified to his education and experience, the license held by the laboratory, the operation of the Intoxilyzer, and the training of the officer to operate the Intoxilyzer.
If a subject gives an adequate deep-lung air sample, the Intoxilyzer will record an accurate blood-alcohol percent. If the subject provides an inadequate sample, the result shown on the machine will be lower than the subject’s actual blood-alcohol percent. The relationship between blood-alcohol and breath-alcohol is good, that is, usually within 0.01 percent, in a healthy subject in the elimination phase.
As a person’s alcohol level increases, the probability of causing an accident increases. Mental factors, including judgment and the ability to gather and process information, are affected. The ability to concentrate on a task and one’s attitude toward driving change. Inhibitions are one of the first things affected. If the alcohol level gets high enough, balance and coordination are affected. One can be under the influence of alcohol for driving at 0.05 BAL. All persons are impaired and cannot drive safely at 0.10 BAL. Drunk people have more alcohol in their systems than people who are merely impaired. From 0.15 BAL and up, where the physical impairment is more obvious, you see staggering and slurred speech as opposed to just the mental factors. Given defendant’s weight, he explained the relationship between blood-alcohol concentration and how much alcohol he must have *Supp. 10 drunk. Alcohol is metabolized at a “pretty predictable rate” of 0.015 percent per hour.
The manufacturer of the Intoxilyzer states that the machine’s accuracy is better than plus or minus 0.01 percent.
Because the statute is expressed in terms of blood-alcohol level, breath-alcohol results must be converted to equivalent blood-alcohol results. The ratio between breath alcohol and blood alcohol varies to some degree among individuals. The state requires breath testing machines, such as the Intoxilyzer, to be constructed to use a specified conversion ratio. He referred to the writings of Dr. DeBowski, an expert whose opinion is that the actual ratio for approximately 85 percent of the population is such that a breath test underestimates the actual blood-alcohol level by 0.01 percent.
Sufficiency of the Evidence
The jury had evidence of appellant’s driving, his performance on field sobriety tests, his behavior, his breath test results, and the time elapsed from drinking and driving to the breath tests. A reasonable trier of fact could have found beyond a reasonable doubt that appellant drove a vehicle while having a blood-alcohol level of 0.10 percent or more. There was sufficient evidence to sustain the conviction.
Appellant also contends the trial court should have granted his Penal Code section 1118.1 motion for a judgment of acquittal. Our conclusion above necessarily finds this contention to be without merit, since the test is the same. (People v. Veitch (1982) 128 Cal.App.3d 460, 466 [180 Cal.Rptr. 412], rehg. den., hg. den.; People v. Rice (1988) 200 Cal.App.3d 647, 651 [246 Cal.Rptr. 177], review den.)
Instructions
Appellant also contends that the trial court erred by instructing the jury with CALJIC No. 12.61. Again, he relies on People v. Campos, supra, 138 Cal.App.3d Supp. 1.
CALJIC No. 12.61 tells the jury that if they find beyond a reasonable doubt a chemical test of defendant’s blood, breath, or urine showed 0.10 percent or more blood alcohol, then they may, but are not required to, infer that at the time of driving, defendant was under the influence of alcohol. Again citing the circumstantial evidence instruction (CALJIC No. 2.01), appellant argues that the jury was duty bound to accept the interpretation pointing to innocence—i.e., that the BAL at the time of the test was less *Supp. 11 than 0.10—and that the instruction was therefore confusing and should not have been given.[3]
As in reviewing sufficiency of evidence to sustain a conviction, even though an appellate court might believe that circumstantial evidence might be reasonably reconciled with a defendant’s innocence, this alone does not warrant interference with the determination of the trier of fact. (People v. Towler, supra, 31 Cal.3d 105, 118.) Whether the evidence is direct or circumstantial, the relevant inquiry is whether any reasonable trier of fact could have found the relevant facts beyond a reasonable doubt. The instruction complained of no longer states a rebuttable presumption, as discussed in Campos, supra, 138 Cal.App.3d Supp. 1. Now it is stated in terms of a permissible inference. (People v. Milham (1984) 159 Cal.App.3d 487 [205 Cal.Rptr. 688].)
If the jury did not find the test results to be 0.10 percent or more beyond a reasonable doubt, then the instruction by its terms would have no application. It is unlikely that any prejudice would result. The record does not include any questions by the jury indicating confusion. (Compare People v. Milham, supra, 159 Cal.App.3d at pp. 505-506.) We find no prejudice.
Even if the foundational fact (0.10 BAL) were not established, the jury may infer that a defendant was under the influence of alcohol and driving with a blood-alcohol level of 0.10 percent or more. For example, if a defendant tested 0.09 BAL four hours after driving (and five hours after cessation of drinking), Vehicle Code section 23155 would not provide any “presumption” (permissible inference). However, the jury could infer that his blood-alcohol level at the time of driving was over 0.10 percent[4] and that he was under the influence.
In deciding whether a blood-alcohol level at the time of the test of 0.10 percent or more was proved beyond a reasonable doubt, the jury could consider all the other evidence in the case, as discussed above in relation to the proof of the blood-alcohol level at the time of driving.
There was substantial evidence to warrant giving of the questioned instructions. We find no error.
*Supp. 12 Conclusion
In deciding appellant’s guilt of count 2, driving with a blood-alcohol level of 0.10 percent or more, the jury was not required to assume that appellant’s actual blood-alcohol level was at the low end of the margin of error, nor was the jury precluded from considering all the other evidence in the case besides the breath test. Considering all the evidence, and the inferences that could reasonably be drawn therefrom, we find that a reasonable trier of fact could find appellant guilty beyond a reasonable doubt. The evidence is therefore sufficient to support the conviction.
Similarly, in deciding whether the evidence established beyond a reasonable doubt that appellant’s blood-alcohol level at the time of the test was 0.10 percent or more, the jury was not required to assume the lowest possibility nor was it precluded from considering all the evidence. There was substantial evidence for the trial court to give the questioned instruction.
Finding no error, the judgment is affirmed.
Jones, P. J., and Lane, J., concurred.

For brevity, and to distinguish the margin of error, we will use the acronym “BAL” (blood-alcohol level) to refer to the percent by weight of alcohol in a person’s blood, either as indicated by the result of a chemical test of his blood, breath, or urine, or as an actual BAL at the time of a test or driving.

The court in Campos stated that “[u]nless ... the test reading exceeds 0.10 percent by the margin of error recognized in the testing process, there is no way that the trier of fact can be assured beyond any reasonable doubt that defendant’s actual blood alcohol content was not below 0.10 percent.” (People v. Campos, supra, 138 Cal.App.3d at p. Supp. 7.) If there is a margin of error of plus or minus 10 percent in machine accuracy, a test result of 0.11 BAL minus 10 percent possible error equals 0.099 BAL. Campos would declare that result below 0.10 BAL and therefore insufficient; a test result of 0.12 percent or more would be required.
Logic would appear to require applying a similar rule to the asserted 30 percent variation in breath-alcohol to blood-alcohol conversion ratios (Fuenning, supra, 680 P.2d 121; People v. McDonald (1988) 206 Cal.App.3d 877 [254 Cal.Rptr. 384]) for a cumulative margin of error of 40 percent. If so, a conviction could never be sustained unless the breath test result exceeded 0.16 BAL (0.16 BAL minus 40 percent margin of error equals 0.096 percent—again below 0.10 BAL). Neither a reasonable interpretation of the statute, nor the circumstantial evidence instruction, nor the appellate test for sufficiency of the evidence requires such a result.

 Appellant also cites as error the giving of CALJIC No. 12.61.1, which permits a BAL of 0.10 or more at the time of driving to be inferred from the test result of 0.10 or more BAL taken within three hours after driving. Our analysis applies to CALJIC No. 12.61.1 as well as 12.61.

 Four hours X 0.015 BAL metabolized per hour = 0.06 BAL metabolized; 0.06 BAL metabolized + 0.09 BAL at test = 0.15 BAL at driving.