Filed 5/5/22  P. v. Betancourt-Rayo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EDUARDO ANTONIO BETANCOURT-RAYO,<br><br>    Defendant and Appellant. | G059640<br><br>(Super. Ct. No. 18HF0555)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Holly D. Wilkens and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Eduardo Antonio Betancourt-Rayo appeals from a judgment after a jury convicted him of the deliberate and premediated attempted murder of his estranged wife (Wife). He argues the trial court committed evidentiary and sentencing errors. We disagree and affirm the judgment.

FACTS

Wife's bartending shift ended at midnight, and she got into her Toyota Camry to drive home. As she drove away, Betancourt-Rayo drove up rapidly behind her in his truck. Wife stopped at a red light and called her mother to tell her he was following her. Betancourt-Rayo crashed into a car stopped next to Wife's car. Wife saw her car's rear window glass shatter and felt something strike the back of her driver's seat pushing it forward. She looked back and saw bullet holes. Wife drove through the red light and called 911.

Wife drove evasively to avoid being shot. Betancourt-Rayo rammed his truck into the Camry a few times. After the last impact, Betancourt-Rayo lost control of his truck and crashed into a wall. Wife remained in the Camry because the driver's side door was stuck; she was uninjured.

Meanwhile, deputy sheriff Jason McDermott responded to a call of shots fired involving two vehicles. He saw a Toyota Camry drive through a red light without stopping and a Toyota Tacoma travel rapidly through the same intersection. McDermott followed the two vehicles and found the crashed truck. He and his partner approached the truck and heard someone speaking. They opened the door, saw a bloody hand, and pulled Betancourt-Rayo out of the truck.

On the floor of the passenger's side of the truck, they found a revolver with the hammer cocked and rounds in the chamber. The Camry had multiple bullet holes, including in the back of the driver's seat and the right front passenger headrest.

An information charged Betancourt-Rayo with deliberate and premediated attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a), all further statutory

2

references are to the Penal Code, unless otherwise indicated) (count 1). The information alleged he personally discharged a firearm (§ 12022.53, subd. (c)).[1]

Before trial, the prosecution moved to admit evidence that about one month before the shooting, Betancourt-Rayo entered the family home, hit Wife and her sister, and threatened to kill them (Evid. Code, § 1109). Betancourt-Rayo argued the evidence would consume an undue amount of time and was unduly inflammatory. The court opined presentation of the evidence would not consume an undue amount of time and was not too remote. The court explained the evidence was "highly probative" as to his intent to commit domestic violence against the same victim and it was not unduly prejudicial because it was less inflammatory than the charged offense.

At trial, Wife described her near deadly encounter. On cross-examination, Wife admitted she did not see the truck's driver but "it was probably [Betancourt-Rayo]."

The prosecution presented the following evidence pursuant to Evidence Code section 1109. About three weeks prior to the shooting, Wife was asleep in her daughter's bedroom; her son and sister also lived there, and Betancourt-Rayo occasionally slept there. About 2:00 a.m., Betancourt-Rayo entered the bedroom and said he wanted to talk with Wife, but she declined. Wife eventually agreed to go downstairs and talk to avoid scaring her daughter because he appeared intoxicated and was aggressive. Wife resisted his efforts to go into the bedroom and told him to leave or she would call the police. Betancourt-Rayo would not leave and tried to push Wife into the bedroom. Wife called for her daughter to call the police.

Wife's sister woke up and ran downstairs. Wife called the police, and Betancourt-Rayo left. But he walked back inside and punched Wife in the face. Wife's sister intervened, and he punched her in the face. After her children came downstairs, Wife tried to protect her children and sister from Betancourt-Rayo. He punched and

---

[1] We omit further reference to the word "subdivision" when referring to section 12022.53's statutory subparts.

kicked wife. Betancourt-Rayo said, "You're all going to die." As Betancourt-Rayo left he continued to threaten the family.

Relying on the state of the evidence, Betancourt-Rayo argued he acted impulsively and lacked the intent to kill. The jury convicted Betancourt-Rayo of deliberate and premediated attempted murder and found true he personally used a firearm.

At the sentencing hearing in October 2020, Betancourt-Rayo's counsel requested the trial court strike the firearm enhancement in the interests of justice. The court declined. After recounting the facts, the court reasoned Betancourt-Rayo's conduct was "cold, pre-meditated and callous" and "it was nothing short of a miracle" Betancourt-Rayo did not kill or seriously injure Wife. The court opined he still showed no remorse and blamed Wife. The court sentenced Betancourt-Rayo to prison for 20 years for the firearm enhancement plus life with the possibility of parole for attempted murder.

DISCUSSION

*I. Admission of Evidence*

Betancourt-Rayo argues the trial court erred by admitting the prior domestic violence evidence pursuant to Evidence Code section 1109 because the prior conduct was dissimilar to the charged conduct. We disagree.

Generally, evidence that a defendant committed an uncharged offense, propensity evidence, is inadmissible to prove the defendant's disposition to commit the charged offense. (Evid. Code, § 1101, subd. (a); *People v. Baker* (2021) 10 Cal.5th 1044, 1089 (*Baker*).) Evidence Code section 1109 is an exception to the general rule and permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes if the evidence is not made inadmissible pursuant to Evidence Code section 352. (*Baker, supra,* 10 Cal.5th at p. 1089.)

Evidence Code section 352 gives the trial court discretion to exclude or admit evidence of past domestic violence after the court weighs the probative value of the

4

evidence against "the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The law requires "'the probative value of "the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." [Citation.]' [Citation.]" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1276 (*Hollie*).) "'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.'" (*Id*. at p. 1274.) We review the trial court's ruling for an abuse of discretion. (*Ibid*.)

Here, the trial court did not abuse its discretion by admitting the uncharged domestic violence evidence. In the context of Evidence Code section 1109, a defendant's propensity to commit domestic violence is not an extraneous factor; it is relevant to the guilt of the accused—and evidence tending to show that propensity has probative value. (*Baker, supra,* 10 Cal.5th at p. 1089.) In other words, the fact that prior uncharged offense involved domestic violence establishes the requisite similarity to the charged offense. Evidence that three weeks before the charged offense Betancourt-Rayo punched and threatened to kill Wife tended to show he had a propensity to commit domestic violence against Wife and was relevant in proving he attempted to kill her. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1235-1236 [propensity inference in domestic violence cases particularly appropriate because on-going abuse "*escalates in frequency and severity*"].) The method and location of the attacks were dissimilar, but they were similar in that Betancourt-Rayo preyed on Wife when she was vulnerable (at home in the middle of the night and in her car alone) and committed abuse against her. The possibility the prior conduct evidence had sexual overtones because Betancourt-Rayo tried to force Wife back into the bedroom does not negate the fact the incident culminated in him punching and threatening to kill her. Contrary to Betancourt-Rayo's contention,

5

the prior conduct and the charged conduct were sufficiently similar to bring them within the purpose of Evidence Code section 1109.

Additionally, the evidence of Betancourt-Rayo's prior uncharged conduct was not highly inflammatory compared to evidence of the charged crimes and did not create such a risk the jury would prejudge him. The prior uncharged misconduct evidence was not remote in time because it occurred about three weeks before the charged conduct. Finally, presentation of the prior uncharged misconduct evidence did not consume an undue amount of time, a point Betancourt-Rayo does not dispute.

Assuming for the sake of argument the trial court did err by admitting the evidence, Betancourt-Rayo suffered no prejudice. We review the application of the ordinary rules of evidence for harmless error under *People* v. *Watson* (1956) 46 Cal.2d 818. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1203.) The evidence of Betancourt-Rayo's guilt was overwhelming. Indeed, the evidence was so strong that we question the prosecution's decision to seek admission of the prior conduct evidence.

Wife described how a man in a truck who she thought was Betancourt-Rayo rapidly pursued her and shot at her leaving her Camry damaged by bullets. Deputy sheriffs observed the pursuit and found Betancourt-Rayo in his crashed truck with a loaded and cocked revolver near Wife's Camry. It is not reasonably probable Betancourt-Rayo would have received a more favorable result had the trial court excluded the prior conduct evidence.

Betancourt-Rayo's reliance on *People v. Disa* (2016) 1 Cal.App.5th 654 (*Disa*), is misplaced. In that case, defendant admitted killing his girlfriend by putting her in a chokehold during a verbal and physical altercation but denied he intended to kill her. (*Id*. at pp. 660-661.) The jury convicted him of first degree murder. (*Id*. at p. 664.) The *Disa* court held the trial court properly admitted some but not all of the past conduct evidence pursuant to Evidence Code section 1109. (*Id*. at p. 668.) The court opined the trial court abused its discretion by allowing highly inflammatory past conduct evidence

6

that "involved planning, hours of waiting, and a bloody knife attack on sleeping victims." (*Id*. at p. 658.) The court reasoned that given the relatively weak evidence of premeditation, admission of the past conduct evidence created a substantial risk the jury would improperly use the prior act evidence to find premeditation and deliberation. (*Id*. at pp. 673-674.)

Unlike *Disa*, Betancourt-Rayo's past conduct evidence was not highly inflammatory compared to evidence of the charged crimes. Additionally, the past conduct evidence did not create a substantial risk the jury would use that evidence to find premeditation and deliberation. The evidence of premeditation and deliberation was overwhelming. Betancourt-Rayo waited outside Wife's workplace with a loaded gun so he could ambush her as she drove home. There was neither error nor prejudice. Finally, admission of evidence of the prior conduct did not violate Betancourt-Rayo's constitutional rights. (*People v. Nelson* (2016) 1 Cal.5th 513, 537 [application of ordinary rules of evidence does not violate defendant's constitutional rights].)

*II. Sentencing*

Betancourt-Rayo contends the trial court erred by failing to impose a lesser penalty, 10 years, on the firearm enhancement. We disagree.

Section 12022.53(c) mandates the imposition of a 20-year enhancement for personal and intentional discharge of a firearm. Section 12022.53(h) provides that a "court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." Section 12022.53(h) authorizes a court to strike a section 12022.53(d) enhancement entirely and impose no additional punishment.

At the time of sentencing, there was a dispute concerning the circumstances under which a trial court has the discretion to impose a lesser enhancement when it strikes a greater enhancement under section 12022.53. (*People v. Morrison* (2019)

7

34 Cal.App.5th 217, 222 [court has discretion] (*Morrison*); but see *People v. Tirado* (2019) 38 Cal.App.5th 637, 644 (*Tirado I*) [court does not have discretion], review granted Nov. 13, 2019, S257658.)

In *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado II*),[2] our Supreme Court resolved the issue. After detailing section 12022.53's legislative authority and applicable case authority, the court approved of *Morrison* and held, "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53(d) enhancement, and the court determines that the section 12022.53(d) enhancement should be struck or dismissed under section 12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c)." (*Id*. at p. 700, fn. omitted.) Here, the sentencing hearing was after *Morrison, supra,* 34 Cal.App.5th 217, and *Tirado I, supra,* 38 Cal.App.5th 637, but before *Tirado II, supra,* 12 Cal.5th 688.

Betancourt-Rayo contends the matter must be remanded because the record does not reveal whether the trial court was aware of its authority under *Morrison, supra,* 34 Cal.App.5th 217, to strike the section 12022.53(c) 20-year enhancement and impose the section 12022.53(b) 10-year enhancement.

"'[W]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] But if '"the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required."' [Citation.]" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

---

[2] Pursuant to our invitation, the parties filed supplemental letter briefs concerning *Tirado II, supra,* 12 Cal.5th 688.

Here, the record reveals a clear indication the trial court would not exercise its discretion to reduce Betancourt-Rayo's sentence under section 12022.53(c). That subdivision provides for a consecutive 20-year term when the defendant has personally and intentionally discharged a firearm. Based on the facts of the case, we conclude it is inconceivable the trial court would choose to impose the section 12022.53(b) consecutive 10-year term for personally *using* a firearm. At the sentencing hearing, the trial court opined Betancourt-Rayo's conduct was premediated and callous (Cal. Rules of Court, rule 4.421(a)(1) [aggravating circumstances]), and he blamed Wife for the incident and showed no remorse (Cal. Rules of Court, rule 4.423(b)(3) [mitigating circumstances]). The court's comments are a clear indication it would not have reduced the sentence pursuant to *Morrison, supra,* 34 Cal.App.5th 217, because Betancourt-Rayo's conduct was egregious and "it was nothing short of a miracle" he did not kill or seriously injure Wife. On this record, remand is unnecessary.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

SANCHEZ, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9