Filed 8/14/20  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072616 |
| v. | (Super.Ct.No. RIF1402339) |
| ABIEL RIOS HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed.

Erica L. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

A jury convicted defendant and appellant, Abiel Rios Hernandez, of one count of committing a lewd and lascivious act upon J.V., a person 14 years of age or younger (Pen. Code, § 288, subd. (a); count 3).[1] The trial court sentenced defendant to three years in prison.

On appeal, defendant claims the trial court prejudicially erred by (1) excluding evidence that J.V. falsely accused her mother of abusing her when she was six years old, (2) admitting evidence that defendant groped a teenage girl as an uncharged prior act under Evidence Code section 1108, and (3) instructing the jury about adoptive admissions. We agree the trial court incorrectly instructed the jury on adoptive admissions, but conclude any resulting error was harmless. We reject defendant's remaining contentions and affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In 2009, when J.V. was about nine or 10 years old, her family moved in to a new house with seven occupants, one of whom was defendant, her stepgrandfather. Defendant often babysat J.V. while her mother and stepfather worked nights.

J.V. fell asleep on the living room couch while defendant was babysitting her, and woke up to defendant on top of her. Defendant had lowered her pants and underwear and

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

2

had spread her legs.  He had also lowered his pants and was trying to perform sexual intercourse on J.V., but did not penetrate her.

J.V. pushed defendant off of her, pulled up her clothes, and ran into her parents' bedroom, locking the door behind her.  She fell asleep in her parents' bed, but woke up to the sound of defendant entering the bedroom through another door.  Defendant touched J.V.'s breasts and vagina.  J.V. told him to stop, he said "okay," and left.

Defendant later told J.V. that "something bad" would happen if she told anyone about what happened.  J.V. was "really scared" and did not tell anyone.  About two years later, however, J.V. told her best friend, C.G., about the incident.  C.G. urged J.V. to tell her mother or someone else about the incident, but J.V. did not want to tell anyone about it.

Eventually, in November 2013, J.V. told her mother about what defendant had done to her.  J.V. confronted defendant about it, and he responded by saying, "how can you believe that I did that to you?," "why do you say that I did that to you if you know I didn't?," and "do you want to put me in jail?"  J.V. "looked him in the eye" and said, "[y]ou know very well that you did this."  Defendant did not respond, "look[ed] down and . . . left."

Defendant was charged with one count of committing sexual intercourse with a person 10 years of age or younger (§ 288.7, subd. (a); count 1), one count of committing an act of oral copulation or sexual penetration on a person 10 years of age or younger (§ 288.7, subd. (b); count 2), and two counts of committing lewd and lascivious acts upon

3

a person 14 years of age or younger (§ 288, subd. (a); counts 3 & 4). Defendant's first trial resulted in a hung jury on all counts. Upon retrial, a jury convicted defendant of count 3, acquitted him of count 1, and could not reach a verdict on counts 2 or 4. The trial court dismissed counts 2 and 4 and sentenced defendant to three years in prison. Defendant timely appealed.

III.

DISCUSSION

A. *J.V.'s "False Claim" of Abuse*

Defendant contends the trial court prejudicially erred by excluding evidence that J.V. made a "false claim of child abuse" against her mother when she was six years old. We find no error.

1. *Additional background*

Before trial, defense counsel filed a motion seeking to introduce evidence at trial that, when she was in second grade, J.V. falsely reported to her principal that her mother "'scratched, pinched, and hit her.'" The principal reported the allegation to child protective services, who conducted an investigation. J.V.'s mother reported that she had accidentally scratched J.V. while grabbing J.V. when she ran in to the street. "When confronted with the contradictory story, [J.V.] changed her story to corroborate her mother's version." Defendant claimed that, during his first trial, J.V. "admitted under oath to lying about the abuse to school authorities."

4

The People argued the evidence should be excluded under Evidence Code section 352. The People claimed that the details of J.V.'s statement and the subsequent investigation were sparse, relevant witnesses had only vague recollections of the matter, and an untruthful statement that J.V. made when she was six years old had limited probative value.

The trial court excluded the evidence. The court found that its probative value was limited because it would not "shed[] any light on [J.V.'s] credibility." The court reasoned that there was no evidence corroborating whether J.V.'s statement was false and noted that "[j]ust because a second grader is confronted and changes their story, it doesn't mean they lied the first time" because "[k]ids are very susceptible to saying all sorts of things." The trial court further found that admitting the testimony would cause an undue consumption of time, confuse the issues, and would result in "a trial within a trial."

2. *Applicable Law and Standard of Review*

"Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) Because the decision to admit or exclude evidence under Evidence Code section 352 is committed to the trial court's discretion, we will not disturb a trial court's exercise of that discretion """"except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that

5

resulted in a manifest miscarriage of justice."'" (*Uspenskaya v. Meline* (2015) 241 Cal.App.4th 996, 1000-1001.)

3. *Analysis*

We conclude the trial court did not abuse its discretion by excluding evidence about J.V.'s "false claim" of child abuse against her mother. The trial court reasonably concluded that the evidence had limited probative value given that it involved a statement J.V. made when she was six years old and she had only a vague recollection of the incident. Importantly, there was no "conclusive evidence" that J.V. had lied about the incident.[2] (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1458; *People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424 (*Miranda*) [evidence that a witness made a prior false report of sexual abuse does not reflect on the witness's "credibility unless proven to be false"].)

The fact that J.V.'s mother stated she accidentally scratched J.V. and J.V. later conformed her story to her mother's account does not mean that J.V. lied in the first place. (Cf. *Miranda*, *supra*, 199 Cal.App.4th at p. 1425 ["The conclusion that the claim was unfounded was an opinion of a social worker, and the admissibility of that

---

[2] Although defense counsel argued, without evidentiary support, that J.V. admitted in defendant's first trial that she had lied about her mother scratching her, "[a]rgument of counsel is not evidence." (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1173.) The trial court found that it did not "even know whether the statements are false." Further, the prosecutor disputed defense counsel's portrayal of J.V.'s testimony, arguing that she testified that "[s]he had no recollection of it. She was refreshed with a very vague report and recalled something about it, but couldn't remember any details . . . she said her mom caused the injury, but no one was really able to remember anything."

conclusion is doubtful."].)  Because there was no "clear showing" that J.V. had made a false statement, her allegedly "false claim" had little relevance, if any.  (*Ibid*. ["[T]he prior complaint . . . would only be relevant if false, and no clear showing of falsity was made."]; accord, *People v. Tidwell*, *supra*, 163 Cal.App.4th at p. 1458 ["The value of the evidence as impeachment depends upon proof that the prior charges were false."].)  And the fact that the incident occurred when J.V. was six years old—seven years before defendant assaulted her and 12 years before defendant's trial—further supports the trial court's exclusion of evidence about the incident.  (See *People v. Harris* (1998) 60 Cal.App.4th 727, 739 ["'[r]emoteness' or 'staleness' of prior conduct is an appropriate factor to consider in [Evidence Code] section 352 analysis"].)

The trial court thus reasonably concluded that introducing evidence about the incident would cause an undue consumption of time and confuse the issues for the jury to decide.  *People v. Bittaker* (1989) 48 Cal.3d 1046, at page 1097, rejected on another ground by *People v. Black* (2014) 58 Cal.4th 912, is instructive.  There, a victim "testified that when she rejected defendant's advances, he pulled a gun and said, 'you wouldn't argue if I pulled the trigger.'  Defense counsel sought to impeach her by evidence that she had made false charges of sexual molestation against two other men. The trial court upheld an objection under Evidence Code section 352."  (*People v. Bittaker*, *supra*, at p. 1097.)  Our Supreme Court found no abuse of discretion.  (*Ibid*.) The court explained that "[t]he value of the evidence as impeachment depends upon proof that the prior charges were false," so admitting it would "force the parties to present

7

evidence concerning two long-past sexual incidents which never reached the point of formal charges," which "would consume considerable time, and divert the attention of the jury from the case at hand." (*Ibid*.)

In *Miranda*, the appellate court affirmed the trial court's exclusion of evidence that a sexual assault victim had made a prior false accusation of assault. (*Miranda*, *supra*, 199 Cal.App.4th at p. 1426.) The court reasoned that the probative value of the evidence was minimal, particularly because there was no clear showing that the victim's report was false. (*Id*. at p. 1425.) The court thus found that the trial court did not abuse its discretion in excluding the "weak" evidence given that "delving into the issue had the potential for confusing the jury and consuming an undue amount of time." (*Id*. at pp. 1425-1426.)

We find the same is true in this case. The trial court reasonably found that allowing the parties to litigate whether J.V. falsely accused her mother of abusing her when she was six years old could have consumed an undue amount of time given the limited probative value of the evidence. Admitting the evidence would have required testimony from J.V. and her mother, and could have potentially led to testimony from J.V.'s principal and the social worker(s) who investigated the principal's referral. Given the limited probative value of the evidence about the incident in light of the lack of any evidence that J.V. lied about it, the trial court did not abuse its discretion by finding that the potential for a "trial within a trial" about the incident could have confused the issues and consumed an undue amount of time. (See *People v. Tidwell*, *supra*, 163 Cal.App.4th

8

at pp. 1456-1457 [trial court does not abuse discretion by excluding evidence that is "weak on the issue of [the witness's] credibility and would require an undue consumption of time"].)

Defendant argues that, even if the trial court properly excluded the evidence about J.V.'s "false claim" against her mother under Evidence Code section 352, the exclusion of that evidence violated his federal constitutional rights. We disagree.

"[T]he routine application of provisions of the state Evidence Code law does not implicate a defendant's constitutional rights." (*People v. Jones* (2013) 57 Cal.4th 899, 957.) "[O]nly evidentiary error amounting to a *complete preclusion* of a defense violates a defendant's federal constitutional right to present a defense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4, italics added.) That did not occur here. The trial court only excluded some evidence related to J.V.'s credibility, which did not preclude defendant from asserting a defense. "Because the trial court merely rejected some evidence concerning" defendant's defense, the trial court did not violate defendant's federal constitutional rights. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1203.) And "[b]ecause the trial court's ruling was not an abuse of discretion under Evidence Code section 352, defendant's constitutional claim also fails." (*Miranda*, *supra*, 199 Cal.App.4th at p. 1426 [rejecting defendant's argument that exclusion of evidence of victim's prior false claim of sexual abuse violated defendant's federal constitutional rights].)

B. *Prior Uncharged Act*

Defendant asserts the trial court prejudicially erred by admitting evidence that he sexually molested a teenage relative. We conclude the trial court did not err by admitting the evidence.

1. *Additional background*

E.W., defendant's relative, testified at trial that she lived in a home with defendant and other relatives when she was a teenager. She testified that when she was between 13 and 17 years old, sometime in the early 2000's, defendant entered her room at night while she was sleeping.[3] She woke up to him rubbing her "back and forth" "between [her] butt and thigh." Defendant "stopped for a second," then started rubbing E.W. again. E.W. immediately said, "[w]hat are you doing?" to which defendant responded, "it's okay." E.W. jumped up and ran into her aunt's room and told her what defendant had done. E.W.'s aunt corroborated E.W.'s account at trial.

Defendant objected to the admission of any evidence related to E.W.'s allegations against defendant. The trial court admitted the evidence under Evidence Code section 1108 as admissible evidence of prior uncharged acts.

---

[3] Testimony about when the incident occurred is unclear and inconsistent. E.W. testified that it happened sometime between 1998 and 2001, but her aunt testified that it happened in 2001.

## 2. *Applicable Law and Standard of Review*

"The general public policy on character or propensity evidence is that it is *not* admissible to prove conduct on a given occasion." (*People v. Cottone* (2013) 57 Cal.4th 269, 285.) The Legislature, however created an exception for sex offense cases through Evidence Code section 1108, which provides in relevant part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] [s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352." (Evid. Code, § 1108, subd. (a).)

Thus, under Evidence Code section 1108, there is a "presumption *favoring* the admissibility of sexual offense evidence . . . to show propensity to commit the charged offense." (*People v. Merriman* (2014) 60 Cal.4th 1, 42, italics added.) Evidence Code section 1108 nonetheless "preserves the trial court's discretion to exclude evidence under [Evidence Code] section 352 if its prejudicial effect substantially outweighs its probative value. [Citations.] In deciding whether to exclude evidence of another sexual offense under [Evidence Code] section 1108, 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the

11

defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' [Citation.] Like any ruling under [Evidence Code] section 352, the trial court's ruling admitting evidence under [Evidence Code] section 1108 is subject to review for abuse of discretion." (*People v. Story* (2009) 45 Cal.4th 1282, 1294-1295.)

　　3. *Analysis*

We conclude the trial court did not abuse its discretion by allowing E.W. and her aunt to testify about defendant groping E.W. As the trial court correctly observed, the manner in which defendant allegedly groped E.W. was "very similar" and "almost identical" to how he sexually molested J.V. In both instances, defendant touched E.W. and J.V. in the middle of the night when they were sleeping alone. Defendant's offense against E.W. therefore was relevant not only because it was a sexual offense, but because it "demonstrated [defendant's] propensity to prey upon and sexually assault females when they were sleeping or otherwise particularly vulnerable and when it was risky to do so." (*People v. Escudero* (2010) 183 Cal.App.4th 302, 311.) The evidence was therefore relevant.

Defendant argues the evidence was inadmissible, in part because E.W. was older than J.V. when the incidents occurred. We disagree for two reasons. First, the trial court correctly noted that there was not a "substantial" age difference between E.W. and J.V. Second, even if there had been a substantial age difference between them, the trial court may have nonetheless permissibly admitted the evidence. (See *People v. Escudero*, *supra*, 183 Cal.App.4th at p. 311 [no abuse of discretion where trial court admitted

12

evidence that defendant sexually assaulted two women to prove defendant committed lewd and lascivious acts against a seven-year-old girl].)

Defendant also argues the incident involving E.W. was too remote in time because it occurred about eight years before defendant assaulted J.V. We disagree. "Numerous cases have upheld admission pursuant to Evidence Code section 1108 of prior sexual crimes that occurred *decades* before the current offenses." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992, italics added.)

Finally, defendant asserts evidence about the incident involving E.W. was too inflammatory. Again, we disagree. The evidence at trial showed that defendant rubbed E.W.'s legs while she was sleeping, and that she ran away when she woke up. The evidence also showed that defendant pulled down J.V.'s underwear, touched her vagina, and was trying to penetrate her with his penis while she was sleeping. After J.V. woke up, ran into another room, locked the door, and fell asleep, defendant entered the room from another door and touched her breasts and vagina. In short, defendant's acts against E.W. were less egregious than what he did to J.V.[4] For that reason, the evidence about defendant groping E.W. was not inadmissible under Evidence Code section 1108 as unduly inflammatory. (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 406 [evidence of "uncharged sexual misconduct" was not unduly inflammatory because it was as "equally graphic" as charged offense]; *People v. Harris*, *supra*, 60 Cal.App.4th at p. 738 [evidence

---

[4] We do not suggest that what defendant allegedly did to E.W. was anything other than egregious.

13

of violent attack of a stranger extremely inflammatory because it was more egregious than charged offense of licking and fondling incapacitated victim].)  Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence about defendant's uncharged sexual misconduct against E.W.

C. *Adoptive Admissions Instructions*

Defendant contends the trial court prejudicially erred by instructing the jury on adoptive admissions.  We agree the trial court erred by giving the instruction, but find the error, if any, was harmless.

1. *Additional Background*

The trial court instructed the jury with CALCRIM No. 357 as follows:  "If you conclude that someone made a statement outside of court that accused the defendant of the crime and the defendant did not deny it, you must decide whether each of the following is true:  [¶]  1. The statement was made to the defendant or made in his presence;  [¶]  2. The defendant heard and understood the statement;  [¶]  3. The defendant would, under all the circumstances, naturally have denied the statement if he thought it was not true;  [¶]  AND  [¶]  4. The defendant could have denied it but did not. [¶]  If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true.  [¶]  If you decide that any of these requirements has not been met, you must not consider either the statement or the defendant's response for any purpose."

14

The trial court found that the instruction was appropriate given defendant's reaction when J.V. confronted him. According to J.V. and her mother, J.V. confronted defendant about what he had done to her, to which defendant responded by saying, "how can you believe that I did that to you?," "why do you say that I did that to you if you know I didn't?," and "do you want to put me in jail?" J.V. then "looked him in the eye" and said, "[y]ou know very well that you did this." In response, defendant "look[ed] down and . . . left."

### 2. *Applicable Law and Standard of Review*

The trial court had a duty to instruct on general principles of law applicable to the case. (*People v. Blair* (2005) 36 Cal.4th 686, 744-745). "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) We review alleged instructional errors de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569-570.)

"Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." (Evid. Code, § 1221.) The statute thus "contemplates either explicit acceptance of another's statement or acquiescence in its truth by silence or equivocal or evasive conduct." (*People v. Combs* (2004) 34 Cal.4th 821, 843; *People v. Jennings* (2010) 50 Cal.4th 616, 661 [a defendant can "expressly or impliedly" adopt another person's statements].) Under Evidence Code section 1221, if a defendant "is accused of having

15

committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt.' [Citations.] 'For the adoptive admission exception to apply, . . . a direct accusation in so many words is not essential.' [Citation.] 'When a person makes a statement in the presence of a party to an action under circumstances that would normally call for a response if the statement were untrue, the statement is admissible for the limited purpose of showing the party's reaction to it. [Citations.] His silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence.' [Citation.]" (*People v. Riel* (2000) 22 Cal.4th 1153, 1189.)

"'[A] typical example of an adoptive admission is the accusatory statement to a criminal defendant made by a person *other* than a police officer, and defendant's conduct of silence, or his words or equivocal and evasive replies in response. With knowledge of the accusation, the defendant's conduct of silence or his words in the nature of evasive or equivocal replies lead reasonably to the inference that he believes the accusatory statement to be true.' [Citation.]" (*People v. Silva* (1988) 45 Cal.3d 604, 623-624.) Put another way, the evidence must show the defendant participated in a conversation in which a crime was discussed and the circumstances offered the defendant the opportunity

16

to deny responsibility for the crime, but the defendant did not do so. (*People v. Davis* (2005) 36 Cal.4th 510, 539.)

### 3. *Analysis*

We conclude the trial court's instruction on adoptive admissions was inappropriate. When J.V. accused him of molesting her, he responded by asking J.V., "how can you believe that I did that to you?," "why do you say that I did that to you if you know I didn't?," and "do you want to put me in jail?"

"If the accused responds to the statement with a flat denial, there is no admission." (*People v. Wilson* (1965) 238 Cal.App.2d 447, 457.) Given that defendant unequivocally denied J.V.'s accusations, his conduct did not amount to an adoptive admission. (See *ibid.*; see also CALCRIM No. 357 [adoptive admission requires that "defendant would, under all the circumstances, naturally have denied the statement if (he/she) thought it was not true"].) The jury could not have reasonably construed defendant's response "'as a tacit admission of [J.V.'s] statements made in his presence.' [Citations.]" (*People v. Riel*, *supra*, 22 Cal.4th at p. 1189.) We therefore conclude the trial court erred by instructing the jury with CALCRIM No. 357. (See *People v. Carter* (2003) 30 Cal.4th 1166, 1198 [trial court may give adoptive admission instruction only if trial record contains evidence of an adoptive admission].)

### 4. *Harmless Error*

Even though the trial court erroneously instructed the jury with CALCRIM No. 357, the error was harmless. Reversal is required only if it is reasonably probable

17

defendant would have received a more favorable outcome had the trial court not given the instruction. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299 [erroneous adoptive admission instruction was harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836.].)

The trial court instructed the jury to follow only the instructions that applied. The court explained that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case." The court also instructed the jury, "[d]o not assume just because I give a particular instruction that I'm suggesting anything about the facts."

As given to the jury, CALCRIM No. 357 "did not assume" that defendant made an adoptive admission, but instead "leaving that factual determination and its significance to the jury." (*People v. Visciotti* (1992) 2 Cal.4th 1, 60-61.) Nor did the trial court instruct the jury that defendant's conduct amounted to an adoptive admission. By its plain terms, CALCRIM No. 357 applied only if the jury found its four requirements were satisfied. It further explained that if the jury found that any of its requirements was not met, "you must not consider either the statement or the defendant's response for any purpose."

The jury therefore was directed to consider the instruction only if the jury found defendant made an adoptive admission. If the jury found that he did so, then the instruction was proper. But if the jury found defendant did not make an admission, then the instruction was inapplicable, and the jury is presumed to have ignored it as instructed. (*People v. Chism*, *supra*, 58 Cal.4th at p. 377.) So, even if the instruction was inapplicable and erroneously given, any resulting error was harmless. (See *People v.*

18

*Visciotti*, *supra*, 2 Cal.4th at p. 61 ["Even were we to conclude that the [flight] instruction should not have been given, however, it was clearly harmless . . . . [T]he instruction did not assume that flight was established, leaving that factual determination and its significance to the jury."]; see also *Whitehorn*, *supra*, 60 Cal.2d at p. 262 [admission of evidence under adoptive admission rule harmless because jury instructed "to disregard the evidence unless they found appellant admitted the truth of the statement by his conduct"].)

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

SLOUGH
J.

MENETREZ
J.

19